UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────

TERRANCE CAREW,

                Petitioner,

        v.

ROBERT MORTON,

                Respondent.

**MEMORANDUM & ORDER**
20-CV-02480 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    Petitioner filed a petition for habeas corpus, pursuant to 28 U.S.C. § 2254, related to his conviction following a jury trial in Queens County Supreme Court. ECF No. 1. The sole ground for Petitioner's habeas petition is that the trial court recognized that the prosecutor assigned to his case used peremptory challenges that discriminated against black prospective jurors in a manner that violated *Batson v. Kentucky*, 476 U.S. 79 (1986), but failed to impose any remedy. For the reasons set forth below, the Court denies the petition because Petitioner's *Batson* challenge is procedurally defaulted, and Petitioner has not demonstrated ineffective assistance of counsel or any other ground to excuse Petitioner's default. However, since the Appellate Division concluded that a *Batson* violation occurred, Petitioner has made a substantial showing that he was denied a constitutional right, and the Court therefore grants a certificate of appealability on the issues raised in the petition.

## PROCEDURAL HISTORY

    Petitioner was charged with two counts of attempted first-degree murder related to his allegedly shooting at two police officers, one count of attempted second-degree murder related to shooting at another person who was not a police officer, and one count of second-degree criminal

possession of a weapon. ECF No. 1 at 4; ECF No. 8-7 at 171. Petitioner's claim for habeas relief relates solely to the jury selection proceedings prior to his trial. ECF No. 1 at 4.

When the parties were selecting regular jurors, the prosecutor used peremptory challenges to strike two black prospective jurors. ECF No. 8-2 at 95–96. Petitioner's trial counsel did not object to the peremptory challenges at that time. *Id.* During a later round of *voir dire* to select alternate jurors, the prosecutor used another peremptory strike on a third black prospective juror. *Id.* at 216. At that point, Petitioner's trial counsel objected and "ask[ed] for a race neutral reason" since he was "the third African American that has been excluded." *Id.* Petitioner's counsel said that he was challenging only the exclusion of the potential alternate juror. *Id.* at 216–17. The presiding judge immediately recognized that the prosecutor likely wanted to exclude that alternate juror because he was "a community organizer," but the judge proceeded to ask the prosecutor why she had used peremptory challenges against "the other[]" black jurors, even though Petitioner's counsel had not expressly challenged their exclusion. *Id.*

Since one of the excluded prospective regular jurors had a law enforcement background, the judge was particularly focused on why the prosecutor would not want a person with such a background as a juror in a trial where the defendant was charged with the attempted murder of police officers. ECF No. 8-2 at 216–17. The prosecutor attempted to explain that the juror might "utilize [his] background[]" rather than independently assess the facts of the case, but the judge described that explanation as "problematic." *Id.* at 217–19. With respect to the second prospective black regular juror who had been excluded, the prosecutor said that he had a relative who had been convicted of a crime. *Id.* at 219. Although the prospective juror had said that his relative's experience would not interfere with his ability to decide the case, the prosecutor thought his body language and demeanor undermined those assurances. *Id.* at 219–20.

The judge expressly found that the prosecutor's explanation for her peremptory challenge to the prospective alternate juror was "realistic" and therefore not discriminatory. ECF No. 8-2 at 221. The judge did not expressly state that the prosecutor had used her peremptory challenges in a discriminatory manner—beyond his prior comment that the prosecutor's explanation about her reason for striking the juror with the law enforcement background was "problematic"—but the judge offered to seat both of the other two prospective jurors as alternates. *Id.* The judge explained to the parties that he always kept jurors struck by peremptory challenges at the courthouse until the jury had been fully selected. *Id.* However, a person identified by the trial transcript as the "court clerk" said that she had forgotten that was the judge's practice and had let the excluded jurors leave. *Id.* The judge responded by saying, "I doubt that we will be able to get them back," and he proposed that the parties "move on." *Id.* at 222. Petitioner's counsel did not contemporaneously object to not receiving a remedy for the *Batson* violations. *Id.*

After the discussion of Petitioner's *Batson* challenge, the parties discussed whether they were making peremptory challenges to several more prospective jurors until four alternate jurors had been selected. ECF No. 8-2 at 222–26. The court then administered the trial oath to the full panel of regular and alternate jurors and dismissed them for the day. *Id.* at 226–28. After the jurors departed, the court asked counsel for both sides whether they had "[a]ny applications." *Id.* at 228. Both attorneys, including Petitioner's trial counsel, responded, "No." *Id.*

The jury returned a verdict acquitting Petitioner of both counts of attempted first-degree murder, but Petitioner was convicted of the remaining charges. ECF No. 8-7 at 171. He was sentenced to concurrent 14-year terms of incarceration and five years of post-release supervision. *Id.* at 198. Petitioner appealed his conviction to the Appellate Division and, in doing so, argued that the trial court improperly failed to impose a remedy for the prosecutor's *Batson* violation.

ECF No. 8 at 28–29.  The Appellate Division affirmed Petitioner's conviction, found that his trial counsel had failed properly to preserve his *Batson* argument, but also held that Petitioner's counsel was not constitutionally ineffective.  *People v. Carew*, 88 N.Y.S.3d 895, 895–96 (2d Dep't 2018).  Petitioner asserted the same *Batson* challenge when seeking leave to appeal to the New York Court of Appeals, *see* ECF No. 8 at 149–50, but the Court of Appeals denied leave to appeal, *see People v. Carew*, 123 N.E.3d 853 (N.Y. 2019).  Petitioner then timely filed a petition for habeas corpus in this Court, pursuant to 28 U.S.C. § 2254.  ECF No. 1.

## LEGAL STANDARD

To determine whether a petitioner in state custody is entitled to a writ of habeas corpus, federal courts apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  That statute provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law only if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with facts that are materially indistinguishable from a relevant Supreme Court precedent," the state court arrived at a different result.  *Evans v. Fischer*, 712 F.3d 125, 132 (2d

4

Cir. 2013).[1]  The writ may also be granted if a state court decision is an "unreasonable application" of clearly established federal law, meaning "the state court identifie[d] the correct governing legal principle from [Supreme Court] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

In addition to correcting a state court's errors of law, a district court may grant a writ of habeas corpus when a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2). The state court's determination of the facts is presumed to be correct, however, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

## DISCUSSION

Although the Appellate Division ruled that a *Batson* violation occurred, it also held that Petitioner had failed to preserve his argument that the trial court did not impose an adequate remedy, which is a procedural bar to this Court granting habeas relief.  Petitioner must therefore demonstrate cause and prejudice to excuse that procedural default, and he attempts to invoke ineffective assistance by his trial counsel to do so.  However, as further explained below, the Appellate Division's rejection of Petitioner's ineffective assistance of counsel claim is entitled to deference under AEDPA even in the context of deciding whether Petitioner has an excuse for his procedural default.  But even if the Court were to assess Petitioner's ineffective assistance

---

[1]   Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

5

argument *de novo*, the Court would conclude that Petitioner's trial counsel was not constitutionally ineffective and, therefore, that Petitioner's *Batson* claim is procedurally barred.

        **I.**      **Petitioner Has Procedurally Defaulted His Claim that the Trial Judge Failed to Award Him an Adequate Remedy for the Prosecutor's *Batson* Violation**

The trial transcript is arguably unclear about whether the trial judge actually found that a *Batson* violation occurred. *See* ECF No. 8-2 at 216–22. However, the Appellate Division unambiguously concluded that "the Supreme Court granted the defendant's challenge, made pursuant to *Batson v Kentucky* (476 US 79 [1986]), to the prosecutor's use of peremptory challenges for two potential jurors." *Carew*, 88 N.Y.S.3d at 895–96. This conclusion is entitled to deference pursuant to AEDPA, and the Court finds no reason to set it aside. The success of Petitioner's claim for habeas relief, therefore, hinges on his argument that the trial court failed to impose any of the remedies that *Batson* requires after a finding of discrimination, such as "discharg[ing] the venire and select[ing] a new jury." *Batson*, 476 U.S. at 99 n.24. To succeed on this claim, Petitioner must demonstrate cause and prejudice to excuse the Appellate Division's finding that his request for a remedy for the *Batson* violation was "unpreserved for appellate review." *Carew*, 88 N.Y.S.3d at 896.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "To establish cause, the prisoner must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Then, to establish prejudice, the prisoner must show not merely a substantial federal claim, such that the errors at

6

trial created a *possibility* of prejudice, but rather that the constitutional violation worked to his *actual* and substantial disadvantage." *Shinn v. Ramirez*, 596 U.S. 366, 379–80 (2022) (emphasis in original). "[A]ttorney error is an objective external factor providing cause for excusing a procedural default" but "only if that error amounted to a deprivation of the constitutional right to counsel." *Davila v. Davis*, 582 U.S. 521, 528 (2017). Under such circumstances, "[a]n error amounting to constitutionally ineffective assistance is imputed to the State and is therefore external to the prisoner." *Id.* Alternatively, the fundamental miscarriage of justice exception applies to a "narrow class of truly extraordinary cases [that] consists of those presenting credible and compelling claims of actual innocence." *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019). That exception does not apply because Petitioner has not asserted or attempted to prove his actual innocence. *See* ECF Nos. 1, 10.

The prohibition against considering claims for habeas relief that have been procedurally defaulted, and the related rules for determining when a procedural default is excused, are not defined in AEDPA. Instead, procedural default is an equitable doctrine created by the Supreme Court prior to AEDPA and subject to adjustment "in the exercise of the [Supreme] Court's discretion." *Martinez v. Ryan*, 566 U.S. 1, 13 (2012). Nevertheless, the procedural default doctrine continues to apply even after AEDPA, and "a federal court must *deny* relief to a state habeas petitioner who fails to satisfy either th[e] [Supreme] Court's equitable precedents," such as its rules regarding procedural default, "or AEDPA." *Brown v. Davenport*, 596 U.S. 118, 134 (2022) (emphasis in original).

The Appellate Division's decision not to consider Petitioner's *Batson* argument because his trial counsel did not contemporaneously object to the trial judge's failure to impose any remedy was based on an adequate and independent state procedural rule. "To qualify as an

7

adequate procedural ground, capable of barring federal habeas review, a state rule must be firmly established and regularly followed." *Johnson v. Lee*, 578 U.S. 605, 608 (2016). The Second Circuit "has held repeatedly" that New York's "contemporaneous objection rule" satisfies these criteria. *Driver v. Coveny*, No. 19-cv-3860, 2023 WL 4066558, at *10 (E.D.N.Y. June 15, 2023). Petitioner must, therefore, demonstrate cause and prejudice to excuse this procedural default.

## II. The Appellate Division's Rejection of Petitioner's Ineffective Assistance Claim Is Entitled to Deference

Petitioner argues that his procedural default of his *Batson* argument should be excused because his trial counsel provided ineffective assistance. Petitioner's current counsel also represented Petitioner during his state court appeal and made the same argument, *see* ECF No. 1-3 at 38–41, which the Appellate Division rejected by holding that Petitioner's trial counsel was not constitutionally ineffective. *Carew*, 88 N.Y.S.3d at 896.[2] Ordinarily, when a state court rules on the merits of an issue, a federal habeas court's review of the same issue must give deference to the state court's decision, pursuant to AEDPA. *See* 28 U.S.C. § 2254(d). However, the Second Circuit has expressly left open the question of whether federal courts should give deference to state court decisions about ineffective assistance of counsel when a habeas petitioner asserts ineffective assistance in an attempt to excuse the procedural default of another claim, rather than as an independent claim for habeas relief. *Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016) (explaining that "[w]e need not decide which standard of review applies here"

---

[2]  During Petitioner's appeal, his counsel made a conclusory, one-sentence assertion that Petitioner's trial counsel was also constitutionally ineffective for failing to insist on examining a DNA analyst whom the prosecutors did not call at trial, but the *Batson* issue was the only ground for ineffective assistance that was meaningfully argued to the Appellate Division. *See* ECF No. 1-3 at 56.

8

because petitioner's procedurally defaulted claims would fail on the merits); *McPherson v. Keyser*, No. 20-161-pr, 2021 WL 4452078, at *2 n.1 (2d Cir. Sept. 29, 2021) (reiterating that the Second Circuit "ha[d] not yet spoken definitively" on this issue). Some Courts of Appeals have held that, in the procedural default context, arguments about ineffective assistance of counsel are subject to *de novo* review, while at least one Court of Appeals has applied AEDPA's deferential standard. *Compare Fischetti v. Johnson*, 384 F.3d 140, 154–55 (3d Cir. 2004) (holding that ineffective assistance argument made to excuse procedural default should be reviewed *de novo*), *and Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006) (same), *with Richardson v. Lemke*, 745 F.3d 258, 273 (7th Cir. 2014) (applying AEDPA deference to ineffective assistance argument made to excuse procedural default).

The Supreme Court has not yet spoken on the issue of the appropriate standard of review, but its decisions in other habeas cases suggest that this Court must give deference to the Appellate Division's finding that Petitioner's counsel was not constitutionally ineffective. The Supreme Court has made clear that a habeas petitioner must exhaust arguments about ineffective assistance of counsel in state court, even if the petitioner is relying on those arguments as a means of excusing a procedural default, rather than as an independent claim for habeas relief. *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986); *see also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (reiterating after passage of AEDPA that "[a] claim of ineffective assistance . . . generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"). "The principle of comity that underlies the exhaustion doctrine" compelled this conclusion. *Carrier*, 477 U.S. at 489. But comity would be ill-served by requiring states to adjudicate ineffective assistance of counsel claims only for a federal court to give that adjudication no deference in a subsequent habeas petition.

9

Two other, more recent Supreme Court decisions show that AEDPA's statutory requirements apply even when a court is applying a judicially-created doctrine related to habeas petitions, such as procedural default.  First, the Supreme Court has held that even when a court is considering whether ineffective assistance of counsel excuses a habeas petitioner's procedural default, the court may not expand the record to consider evidence that was not before the state court unless the petitioner satisfies the criteria described by AEDPA in 28 U.S.C. § 2254(e)(2).  *Ramirez*, 596 U.S. at 388–89.  Second, the Supreme Court held prior to the passage of AEDPA that, for many types of constitutional violations, a habeas petitioner must prove not only that a violation occurred, but also that it "had substantial and injurious effect or influence on the verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  This equitable requirement continues to apply post-AEDPA, and the Supreme Court has explained that when federal courts undertake this inquiry, they must also give AEDPA deference, pursuant to 28 U.S.C. § 2254(d)(1), to any state court decision holding that a constitutional error was harmless.  *Brown*, 596 U.S. at 134; *see also Davis v. Ayala*, 576 U.S. 257, 268 (2015) (rejecting argument "that *Brecht* somehow abrogates the limitation on federal habeas relief that § 2254(d) plainly sets out" if the state court has addressed a harmless error inquiry on the merits).

Collectively, these decisions show that even when federal courts considering habeas petitions apply equitable rules not required by AEDPA—such as procedural default and harmless error—the courts may not ignore any of AEDPA's statutory restrictions.  As applied to this case, that means the Court cannot find that ineffective assistance of counsel excuses Petitioner's procedural default unless the Appellate Division's decision that Petitioner's state trial counsel was not constitutionally ineffective cannot withstand AEDPA's deferential review codified in 28 U.S.C. § 2254(d)(1).

10

### III. The Appellate Division's Rejection of Petitioner's Ineffective Assistance Claim Was Not Contrary to Clearly Established Supreme Court Law

"To prove ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice," as required by the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984). *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558–59 (2018). When assessing the deficient performance prong, even in the absence of AEDPA's additional deference, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and . . . the burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013). A lawyer's performance is not constitutionally deficient "so long as his decisions fall within the wide range of professionally competent assistance. It is only when the lawyer's errors were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment that *Strickland*'s first prong is satisfied." *Buck v. Davis*, 580 U.S. 100, 118–19 (2017). "Unreasonable errors by counsel include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." *Giordano v. Brann*, No. 22-1639-cv, 2023 WL 7293773, at *2 (2d Cir. Nov. 6, 2023). To satisfy the prejudice prong of an ineffective assistance claim, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

When AEDPA's deferential review applies, a habeas court's review of an ineffective assistance claim "must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 575 U.S. 312, 316–17 (2015). As

11

with any other claim adjudicated on the merits by a state court, a petitioner must show that the state court's decision about ineffective assistance "is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020).  Additionally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Sexton*, 138 S. Ct. at 2560.

The Appellate Division rejected Petitioner's contention that his trial counsel was constitutionally ineffective, holding "that defense counsel provided meaningful representation" and that Petitioner "ha[d] failed to demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings." *Carew*, 88 N.Y.S.3d at 896.  Although "New York's test for ineffective assistance of counsel under the state constitution differs from the federal *Strickland* standard," it is actually "more generous toward defendants than *Strickland*." *Rosario v. Ercole*, 601 F.3d 118, 123–24 (2d Cir. 2010).  "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Id.* at 124; *see also Gross v. Graham*, 802 F. App'x 16, 19 (2d Cir. 2020) (reiterating same conclusion).  However, unlike in *Strickland*, New York "courts need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Instead, the question is whether the attorney's conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial." *Rosario*, 601 F.3d at 124.  Despite this difference in the second prong of each respective test, the Second Circuit has held that New York's application of its own state law standard for ineffective assistance of counsel "is not

12

contrary to the *Strickland* standard" for the purpose of determining whether a New York court's decision is entitled to deference under AEDPA. *Id.*

The Appellate Division's decision that Petitioner's trial counsel did not perform in a constitutionally deficient manner was not contrary to, or an unreasonable application of, the Supreme Court's case law. *See* 28 U.S.C. § 2254(d)(1). Nor was it an unreasonable determination of the facts in light of the evidence presented to the Appellate Division. *See* 28 U.S.C. § 2254(d)(2). Petitioner's trial counsel provided competent representation throughout the trial, as principally illustrated by his obtaining acquittals on the two most serious charges of attempted first-degree murder, which would likely have significantly increased Petitioner's term of incarceration by exposing him to potential life imprisonment and mandatory minimum terms of 20 years' imprisonment. *See* ECF No. 8-7 at 171; *see also* N.Y. Penal L. §§ 70.00(2), 70.00(3)(a)(i), 110.05(1), 125.27(1)(a)(i). He astutely spotted a potential *Batson* challenge and raised it. ECF No. 8-2 at 216–17. After having that challenge denied with respect to the prospective alternate juror who had been a community organizer—the specific juror who prompted counsel to make the challenge—he accepted the trial judge's offer that two prior prospective jurors be seated as alternate jurors. *Id.* at 219–20. When that remedy turned out to be unavailable to him, he completed jury selection and expressly told the judge that he had no further requests for relief. *Id.* at 228. After giving the deference owed to Petitioner's trial counsel, the Court infers that Petitioner's counsel concluded that the only other conceivable remedy for the *Batson* violation—selecting a completely new jury—would have made Petitioner worse off than proceeding with the jury that Petitioner's counsel found to be acceptable.

Although, as discussed above, the *Batson* challenge was the only ground that Petitioner meaningfully argued amounted to ineffective assistance of counsel, *see* ECF No. 1-3 at 38–41,

13

the Appellate Division's denial of Petitioner's ineffective assistance claim does not include a description of why the court deemed Petitioner's trial counsel to have acted reasonably. *Carew*, 88 N.Y.S.3d at 896. Petitioner must therefore "show[] there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The Appellate Division could easily have drawn the inference described above—*i.e.*, that Petitioner's trial counsel preferred the jury he had, despite the *Batson* violation, to an unknown jury. Even if other courts might not draw the same inference or agree that such a decision by trial counsel is reasonable, rejecting an ineffective assistance claim on that basis is not "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Kayer*, 141 S. Ct. at 523.

The Appellate Division also reasonably concluded that Petitioner was not prejudiced by his trial counsel's failure to insist on selecting a new jury, as required by *Strickland's* second prong. *See Cullen*, 563 U.S. at 189. Petitioner contends, however, that a *Batson* violation automatically satisfies *Strickland's* prejudice prong because if a meritorious *Batson* challenge is rejected by a trial court and properly preserved by the defendant, an appellate court is required to reverse the defendant's conviction. *See* ECF No. 1 at 40–41. That may be true for a meritorious, non-defaulted *Batson* challenge raised on direct appeal, which the Supreme Court has said is a structural error that "requires reversal." *Rivera v. Illinois*, 556 U.S. 148, 161 (2009). When certain types of structural errors are raised "in the context of an ineffective-assistance claim," however, "finality concerns are far more pronounced," and a "petitioner must show prejudice in order to obtain a new trial." *Weaver v. Massachusetts*, 582 U.S. 286, 305 (2017). Although the Supreme Court in *Weaver* dealt with a different type of structural error—the closure of a courtroom—the Court identified *Batson* as another type of structural error and specifically said that its decision left undecided whether the automatic reversal standard would apply if a *Batson*

14

"error[] were raised instead in an ineffective-assistance claim on collateral review." *Id.* at 301–02. The Supreme Court's clear statement of non-decision in *Weaver* means that the Appellate Division, when rejecting Petitioner's ineffective assistance claim, did not contravene clearly established Supreme Court law by requiring Petitioner to show that his trial counsel's failure to push for an alternative *Batson* remedy actually prejudiced him.

### IV. Petitioner's Ineffective Assistance Argument Fails Even *De Novo* Review

The Court would hold that Petitioner has failed to excuse the procedural default of his *Batson* claim even if the Court were to perform the cause-and-prejudice analysis *de novo* without deferring to the Appellate Division's rejection of Petitioner's ineffective assistance claim. Even on *de novo* review, the Court must perform its *Strickland* analysis in a manner that gives deference to the decisions of Petitioner's trial counsel. *Burt*, 571 U.S. at 22–23. For the reasons described above, Petitioner's trial counsel made a permissible strategic decision not to insist on picking a new jury to remedy the prosecutor's *Batson* violation, and Petitioner therefore cannot meet his burden on *Strickland's* first prong.[3] Petitioner's implicit contention that a *Batson* violation can never be waived because the harms that it causes are so fundamental is not

---

[3] The cases on which Petitioner relies to argue that an attorney's failure to pursue a meritorious *Batson* challenge amounts to ineffective assistance of counsel are out-of-Circuit cases. They are not binding on the Court and are also distinguishable from Petitioner's case. For example, in one of these cases, the defendant's own attorney purposefully struck all male jurors solely based on their gender, which represents a level of egregious behavior far beyond merely failing to press a *Batson* challenge. *See Winston v. Boatwright*, 649 F.3d 618, 623, 630–31 (7th Cir. 2011). In another case cited by Petitioner, the Sixth Circuit held that the defendant was automatically prejudiced by his attorney's failure to press the trial court to impose a remedy after the court found that a *Batson* violation had occurred. *See Drain v. Woods*, 595 F. App'x 558, 583 (6th Cir. 2014). As explained below, however, the Sixth Circuit no longer seems to ascribe to this view and has instead held that, when seeking habeas relief, a petitioner must prove that his counsel's failure to make a *Batson* challenge actually prejudiced him because the Supreme Court in *Weaver* has indicated that structural errors are not always presumed to be prejudicial when raised on collateral review. *Parks v. Chapman*, 815 F. App'x 937, 943–45 (6th Cir. 2020).

15

supported by Second Circuit law. To the contrary, the Second Circuit has "h[e]ld that the failure to object to the discriminatory use of peremptory challenges prior to the conclusion of jury selection waives the objection" and that allowing a defendant to make *Batson* challenges later would give the defendant "the opportunity to test his fortunes with the first jury, preserving the opportunity for a mistrial and a second round in the event of a conviction." *McCrory v. Henderson*, 82 F.3d 1243, 1247, 1249 (2d Cir. 1996) (denying habeas petition); *see also United States v. 777 Greene Ave.*, 445 F. App'x 392, 393–94 (2d Cir. 2011) (holding that defendant had forfeited *Batson* challenge by failing timely to appeal challenge from magistrate judge to district judge).

For the second prong of *Strickland*, even though the Supreme Court's decision in *Weaver* did not conclusively hold that *Batson* violations raised on collateral review require a showing of prejudice, the Supreme Court certainly left open that possibility, and emphatically did not hold that courts are required to presume prejudice. *Weaver*, 582 U.S. at 301–02. Therefore, the Court agrees with other courts that have held that *Weaver's* logic of giving greater weight to finality on collateral review means that habeas petitioners must demonstrate prejudice to succeed on ineffective assistance of counsel claims related to *Batson* challenges. *See Hutchinson v. Superintendent Greene SCI*, 860 F. App'x 246, 249 (3d Cir. 2021) (denying habeas petition and holding, in light of *Weaver*, that there was "no reason to relieve [petitioner] of the obligation to demonstrate prejudice" when arguing that attorney's failure to pursue *Batson* challenge amounted to ineffective assistance of counsel); *Parks v. Chapman*, 815 F. App'x 937, 943–45 (6th Cir. 2020) (denying habeas petition and holding that petitioner failed to prove prejudice associated with procedurally defaulted *Batson* challenge).

### V.     The Court Grants a Certificate of Appealability

The Court will grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253. When denying habeas relief, a district court should grant a certificate of appealability if "jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 580 U.S. at 115.  A certificate of appealability is especially warranted "when the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

Granting a certificate of appealability is appropriate here because the Appellate Division held that a *Batson* violation occurred, but the Court's resolution of the issues related to Petitioner's procedural default have prevented the Court from reaching Petitioner's claim that the state court trial judge failed to impose an appropriate remedy.  As described above, the Second Circuit has declined on multiple occasions to clarify what level of deference federal habeas courts must give to state court decisions on ineffective assistance of counsel claims when assessing a habeas petitioner's procedural default.  Different Courts of Appeals have also reached different conclusions about whether, on collateral review, courts are required automatically to presume that a *Batson* violation prejudiced a petitioner.  The Court therefore grants a certificate of appealability for all of the issues raised by Petitioner's habeas petition.

### CONCLUSION

For the reasons set forth above, the Court DENIES the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  The Court issues a certificate of appealability because Petitioner has made a substantial showing that he was denied a constitutional right.  *See*

28 U.S.C. § 2253(c)(2).  The Court respectfully directs the Clerk of Court to enter judgment denying the petition and to close this case.

    SO ORDERED.

 /s/ *Hector Gonzalez*  
HECTOR GONZALEZ  
United States District Judge

Dated: Brooklyn, New York  
       November 29, 2023